The Fourth District Appellate Court of the State of Illinois has reconvened. The Honorable Eugene G. Doherty presiding. Good afternoon. The court is calling case number 4-25-0192, People of the State of Illinois v. Stanley Scott. Would counsel for the appellant please state your name for the record? Nancy Vincent. And for the appellee? David Robinson for the State's Attorney Appellate Prosecutor with Krista Godbars, a 7-11 student from our legal clinic. All right, good afternoon to all of you. Ms. Vincent, you may proceed with your argument. Thank you, Your Honor. May it please the court and counsel, I'm Nancy Vincent, and I represent the appellant Stanley Scott in this matter. And I'd like to begin at the end. The end for Mr. Scott's trial was an incomplete inquiry into his allegations of what happened at his trial and the investigation that preceded that. He made 15 distinct points for his concerns and the trial court inquired as to most of them. However, there were four that needed further inquiry before they could be assessed as they related to information outside of the record. The brief refers to them by number and in the order presented in his letter to the court. Briefly, number eight, that Nicole Trumbo tried to give him his previous attorney an affidavit, that Trumbo's father's child's father was also named Stanley, that a Nakia Prather had some sort of information that Trumbo had shared with her, and that Trumbo's phone was in the possession of others before it had been given to the police for extraction. These items mattered, because they all revolve around the state's main witness against him. And without her, the state could not have made the case against Mr. Scott. The phones in particular were critical, as People's Exhibit 8, the phone that was found at the scene, and People's Exhibits 13 through 15, her phone and the information from her phone, were key pieces of the state used to tie Mr. Scott to the scene. People's Exhibit 8, as this court may recall, is not registered to Mr. Scott, so the state had to rely on Nicole Trumbo and her phone to tie it to him. If, however, there was another Stanley, that would have been potentially exculpatory, especially in light of the fact that the only text on People's Exhibit 8 referred to a, quote, Stanley, unquote, by that name, was from someone named Misty Jordan, and the state never presented evidence of who that might have been. Well, can I just interrupt you there?  The message from Jordan, I don't know why the fact that there would be another Stanley that the record doesn't even show she knew. Presumably, the world does contain other Stanleys, but would that witness have confused Trumbo's ex's, what was the relationship, I've forgotten, was it her ex-husband? Between Jordan and, I'm sorry. No, I mean, if Jordan uses the name Stanley, what does the fact that there's a different Stanley in Trumbo's life suggest about some confusion? The only thing that a Misty Jordan refers to a, quote, Stanley, is that that is the only time on People's Exhibit 8, which is the phone they found at the scene, has that name in it. It's not registered to him. No, I totally get that, but why would Jordan have referred to, I mean, the inference is that somehow she's actually referring to the father of Trumbo's child. That's not really connected to anything. No, it isn't, and I think your confusion is one of the reasons why an inquiry would have mattered. We don't know who this is, and who it is isn't really all that important. But we do know exactly, we know there are two Stanleys, the defendant and Trumbo's child. Why would we have any reason to think that Jordan referring to Stanley is referring to some other woman's paramour who's the father of a child? It just doesn't get off the ground. It just seems like such a shot in the dark. Hey, there's another person named Stanley. Oh, interesting, but what does that have to do with this case? Perhaps not. What it does have to do with is the fact that what Mr. Scott is alluding to in his letter is that she's with some other Stanley. The Stanley, the snake, whomever, is not him. She's with somebody else. But you're talking about Trumbo. The person who used the name Stanley was not Trumbo. It was wording, so it just isn't relevant. Well, I would respectfully disagree with your honor, and the reason is because that phone is, that was one of the pieces of evidence that the state used to connect People's Exhibit 8 to Stanley Scott. The People's Exhibit 8 was found at the scene. It wasn't on him. Right, all I'm saying is there's no evidence that Jordan, or no father. It just doesn't get off the ground. Well, we don't know. We don't know who Misty Jordan is. We don't know who the Stanley she's texting is. Could be, I guess, anybody else named Stanley, I suppose. And he was also there ready to testify. Who, Misty Jordan? Jordan, yes. Okay, and I think the point Mr. Scott is trying to make is that that could have been somebody else, and in conjunction with the fact that this is an ID case. And it's just not a fact other than a speculation that, hey, maybe when Jordan texted, she was really referring not to him, but to Trumbo's child. I mean, it's purely speculation based on a common name. I would agree with you on this record, and that's the whole point behind why an inquiry needed to be made. Just a couple of questions probably would have cleared this up. And I think that's actually really, this court's jurisprudence, particularly in the past three or four years, when it comes to Krenkel, really what this court is asking trial courts to do is just ask the question. It would solve a lot of problems, and it would save a lot of time. The case that I submitted to this court on the motion to sign additional authority basically says exactly that. All you had to do was ask the question. Right, but aren't most of the cases that rely on pretty much total failures, not just, oh, you missed four out of 15? I don't know that there are any cases where they have this many in terms of allegations. I think that Woods is probably pretty close in that he had more than a few, and apparently he was talking at with the court, and the court essentially lost patience with him, is kind of how that hand down reads. And so he was allowed to talk, but counsel, the trial court there didn't ask the trial attorney any specific questions, and the questions that were asked were fairly vague. Counsel in that case didn't really have any response at all. In this case, counsel did have responses to questions that were put to her, which is all the more reason why a remand is needed in order to kind of clear these up. Counsel's response, and I think this has to do with Nicole trying to give an affidavit, and then Nikki Prother, that's all connected to the messages, right? And so counsel said, I read those messages, I thought about them, and I discussed with my client, those don't correlate to our defense, which is an identity defense, so I don't think I should use them. I think we understand about why that wasn't part of the case. Sure, as far as the messages go, because counsel did respond to that. We don't really know who Nikki Prother is, and we don't know what the affidavit that Trumbo was trying to give to previous counsel was. Again- But we do know that she would testify to the same admissions as in the text messages. So it's more of the same, but if it's not consistent with the defense strategy, I think we've covered that. Well, I don't know that the contents of whatever this affidavit is, we don't know what the content was. And I understand that a lot of this was being done fairly quickly, but I don't know that the record necessarily supports an assumption that that affidavit had anything to do with those text messages, but that was in the context of when he was in the LaSalle County Jail and they were texting back and forth. We don't know what this affidavit that Trumbo was trying to give to previous counsel may have been, but a quick question to her probably would have solved that. And apparently the- I just lost my train of thought. So I don't know that those two things connect up that cleanly. They may, the point being, if the trial court had just simply asked the question. So on the issue about the Trumbo's phone was in the possession of others. I mean, it was in the possession of Trumbo and we know she fiddled with it. She deleted information. So what is this mysterious reference to others supposed to lead us to think? Well, I don't know. Again, you know, the problem is that without asking counsel, we are stuck speculating. We can't do that. If counsel had just asked the question or if the trial court had just asked the question of counsel, that would have probably solved a lot of the There are holes here that we can't fill in. We can't speculate. The record doesn't support, you know, we can guess, but the record doesn't support that. We don't know what Mr. Scott's referring to. But a quick question to counsel may have resolved that problem. Can I ask you a question about the severance issue? Okay. Is your position such that whenever an attorney does not move to sever a case in this circumstance, meaning where there's a a corresponding charge of unlawful possession of a weapon by a felon, that it is deficient representation? I would never say never and I would never say always. What I would say on the facts of this case is that I cannot conceive of a reason why you wouldn't sever that charge, especially since she did talk about in the Krenkel hearing that she'd advised Mr. Scott not to testify because of his record. If Mr. Scott had testified, his record would have come out and then there wouldn't have been as much of a reason to sever that charge. But in light of her recommendation he not do that for that specific reason, there is absolutely no reason to allow the jury to hear that he has a felony conviction. That just makes no sense. If he had testified, there's more than the one felony that he might be impeached with? Yes. I don't remember the ages of his felonies, but at least one possibly more would have been presented, sure. How was the stipulation presented? What did the stipulation consist of? There actually wasn't a stipulation per se. What the record reflects is that trial counsel says we would be willing to stipulate, but there's no actual stipulation. How was it presented to the jury? What the prosecutor did was he presented the exhibit, but all he said to the jury was that I think he used the term felony conviction. I can't remember his exact verbiage, but that's the verbiage he used. The exhibit did not go back to the jury. What would the extent of the information conveyed to the jury have been if the prosecution had so wished to present everything that it was legally entitled to present to the That exhibit contained his class X felony for possession with intent to deliver. What would the jury have been informed of had the prosecution in the absence of an agreement with the defense been able to actually inform the jury? The nature of the felony, probably the class, the sentence. Okay, so there was some information that did not go to the jury and that then is of some benefit to a defendant, isn't it? The only benefit is that they don't hear the actual details. Point is, they still now know he has a felony and there's no reason for them to know it otherwise. Okay, but just simply in terms of the information conveyed, what was conveyed was less than what the prosecution could have conveyed. Yes, of course, but I don't think that solves the problem. It certainly lessens the pain, but I don't think it makes the problem go away. And the problem is that you still have a case that relies wholly on Nicole Trumbo and without her, then you have the rest of the pieces of evidence. And one of the pieces they now have is that he's a felon. So to continue, while it's true that counsel isn't necessarily ineffective by foregoing investigations and most of the crankle inquiries that Mr. Scott refers to that we've outlined in the brief have to do with investigation. And I think the Justice Doherty was alluding to the unnecessary areas of investigation. And Mr. Scott would respectfully disagree that those areas were unnecessary because we simply don't know what they were. A simple question would have solved the problem and a simple remand would solve the problem. And the point is, in a lot of the cases, talk about this. Without the inquiry, everyone here is left to guess. Giving a blanket pronouncement of trial strategy is not sufficient under crankle. And so this court's order in Woods is on point for that and instructive as to what trial courts must do when they're presented with allegations concerning counsel's performance. They at least have to ask. And for that reason alone, Mr. Scott asks that this case be reversed and remanded for inquiry into those matters so that the trial court below and this court has a full record from which they can assess the allegations. But in Woods, they ask no questions. The court asked no questions of the attorney. And then in addition, it relied on some facts that actually were not facts, they were an error. Isn't that a significantly different situation in this case? The second part is, the first part, I believe my recollection is that there was a general question, but the trial attorney had no response, I think. So, but, you know, the trial court allowed Mr. Woods to continue to talk, but they didn't get that information. And you're right. I mean, from a factual standpoint, it's a little different. But I don't believe that, you know, the amount that they talk has as much to do with how it should end as what the information is when you end up. And again, you know, we're stuck speculating as to what these, these matters are, when it would have been very simple for the trial court to just ask a couple of questions as it did with the rest of the allegations that Mr. Scott made. And in terms of the Krenkel as well, one of the things used to analyze Krenkel is the trial court's knowledge of defense counsel's performance at trial and the allegations on their face. So concerning trial counsel's performance, Mr. Scott's argument details those errors there. And there are three errors that appear of record. And we talked about the failure to sever count five. There's also the failure to cross-examine Trumbo on the first statement she gave to the police, where she described the robber as someone not matching Mr. Scott's description at all. And then finally failing to correct Trumbo's claim that she was getting no benefit in return for her testimony when she was actually getting use immunity. Okay. Let's, let's talk first about the cross-examination of Trumbo on her first statement. It was elicited that she had spoken to police previously and given a statement that she acknowledges was false. Aren't we talking about how many details counsel elicited out of the false statement? Not whether she went into it at all. Yes and no. Right now it's details mainly because it's also an invited error problem because she withdrew the question when she drew an objection, but later included it in the motion for new trial. So it's unclear if she, I'm not sure you can make an invited error argument based upon the fact that it's later included in the motion for trial. Point is trial counsel was trying to elicit that information to try to elicit something else. The problem is on this record, we don't know what it could have been. Okay. But I mean, isn't it, you can elicit information that somebody gave a false statement, but it's reasonable. The court is probably going to say there's a limit to how much you can go into the details of the false statement. The important thing is it's falsity and you got that right off the bat. Yes. I see my time's up and I'm going to finish answering your question. Yes. There are two problems. First of all, the state's objection was not the right one. And second of all, he still has a right to present his defense and cross-examine for bias and motive. And that was cut off at the past. And I see my time's up. So any other questions I have to address on my reply? Thank you. Thank you. Mr. Godbarge. May it please the court, opposing counsel. My name is Christopher Godbarge and I represent the people of Illinois. The court has before today, two issues, whether the defendant received ineffective assistance of counsel and whether the trial court's crankle inquiry was adequate. I'd like to begin with the ineffective assistance of counsel claim first. As this court knows, this is governed by the familiar two-step test as established by the Supreme Court in Strickland. I won't belabor the details of the rules, except to note that all three of the errors that defendant raises today are matters of trial strategy. And for that reason, they are presumed to be reasonable. And there is a strong presumption at that. And it is defendant's burden to rebut that presumption. What is the strategic advantage to the defendant of not asking the court to sever the unlawful possession of a weapon charge, which would result in the jury not being informed that the defendant has a prior felony? This court and defendant have acknowledged that the so-called all or nothing strategy is a, in some cases, proper. And the benefit to defendant is that there is only one instance of the fact linking the defendant to the crime. So in this instance, it is an identity defense that's being put forth by the defendant at trial. And the jury only having one instance to link trumbo statements to the defendant is a benefit. There are two important things that this court has made clear when applying the all or nothing strategy. The first is that it has to make sense given the strategy that the defendant is choosing. And here, it's the identity defense, as I just explained. In the reply brief, opposing counsel has claimed that these two strategies conflict, but they failed to point out what aspects conflict or why there is any problem with using both strategies. The second part that this court has emphasized is that it is important that trial counsel minimize the prejudice that comes along with being identified as a felon. And in this case, that did happen. There was, in fact, a stipulation, even if it was not entered officially into the court. And both trial counsel made that clear at the beginning of the at the beginning of the trial. And then on page 60 of the record, when this is admitted into evidence, the state acknowledges that there is a stipulation that the parties have agreed to. And that is why the jury was never made aware of the fact that there was a felony that is intricate, intricately related to the crime at play here, and it involves the exact same drug. The other important thing to keep in mind is that the jury was made aware once at the beginning or towards the beginning of trial at record page 60. And then again, during jury instructions, they were made aware that there was a stipulation that the parties have agreed that the defendant is a felon for the purpose of the unlawful possession of weapon by felon charge. And most importantly, that the jury is supposed to only use that evidence for the specific purpose of knowing that he is a felon for that charge, not to use that evidence to make guesses about his character. And while it's true that that doesn't eliminate all of the prejudice, it minimizes it. And that is what this court has held to be important when utilizing the strategy. I'd like to move on to the second alleged error, which is that trial counsel was unreasonable for failing to withdraw, for withdrawing the question about Trumbo's false identification. I'd like to start by noting that withdrawing a question has no foundation in the rules of evidence. It simply is not a thing. Opposing counsel has argued that it can have impact in the sense that... I'm not sure it's not a thing. It happens all the time. You can certainly ask the court or you're inviting the court not to rule on an objection if you withdraw the question. So how do we say it's not a thing? By not a thing, I mean that it's not a word that is in the rules of evidence. There is no rule about withdrawing questions. It's simply asking the trial judge not to issue a ruling. And that highlights an important thing that in this case, the withdrawal happened after the objection was sustained. So in that sense... I believe it happened before. I think the order was the objection was made, then there was a withdrawal of the question, and then the court sustained the objection. I'm sorry. Correct. But the fact that there was an objection is the important part. The fact that the objection was sustained and that there was a ruling that was made is the important part. And so in that sense, it had no impact, especially because this did occur during sidebar. And so the jury was never made aware that this happened. The defendant cites to a fourth district case page for the idea that if a defendant acquiesces to a ruling, that they may not be able to raise it on appeal. However, the facts of that case are wildly different than in this instance. In page, there were two trials. At the first trial, the defendant failed to object at all. And so there was no ruling made by the court. And then at the second trial, the defendant pled guilty instead of utilizing his double jeopardy protection. So those three errors in combination meant that the defendant could not appeal. In this instance, the only error that defendant or the trial counsel may have made is that after the judge explained their ruling, and there was argument back and forth that she didn't push further when the judge had already made up their mind. That's not unreasonable trial strategy. It's simply what you have to do when the judge doesn't agree with you. And here, the judge made the correct decision to sustain this objection. The defendant has argued that the statement should have been allowed under the a conspiracy exception. However, all of the cases that they cite are instances where the state uses the exception against the conspiracy. But what defendant wants... Can we look at this more simply? The witness testified to the defendant's culpability. She was impeached with a prior inconsistent statement when she did not implicate the defendant. This is pretty bread and butter stuff, isn't it? You're just impeaching a witness with a prior inconsistent statement. Well, not quite, Your Honor, because in this instance, you... Well, so first, this highlights the fact that the state, their objection was that this was an improper impeachment. And the reason that is, is because you're trying to impeach with a statement that both the witness and the state agree are a lie. And so if this is supposed to come in under either 10.1 or Rule 12 of 5 slash 115 dash 10.1 and 12, both of those rules require, in the instance of 10.1, it requires, quote, unquote, personal knowledge. In the instance of Rule 12, it requires an identification of a person made after perceiving that person. But in this instance, you don't have personal knowledge of something that you made up. The court has been clear and the Supreme Court... Yeah, I think some of those have to do with whether it can be admitted as substantive evidence. But you can always impeach a witness with the fact that they previously said something different, right? Correct, Your Honor. And that had already happened. The very beginning of the cross-examination, the first point the trial counsel made was that Trumbo lied to the police about her involvement, and she gave a false interview in that she lied during that interview. What you can do is violate the rules of hearsay. You can still impeach for prior inconsistent statements, but that doesn't necessarily eliminate hearsay objections. It doesn't for impeachment. Well, so the rules that opposing counsel has tried to argue under 10.1 and 12 do not allow that. And there is... It could be pointed out, and it was pointed out, that there were inconsistent statements, but the details of it were not necessary. They had already pointed out that she lied and had misidentified the defendant. Or, sorry, I think the misidentification came at the end, but the details of it were not necessary. If you don't have any further questions on that error, I would turn to the third alleged error, which is that trial counsel was unreasonable for choosing not to cross Trumbo about the use immunity agreement. So, there's two questions as part of this, and I'll address the first one last. And so, that question is whether the use immunity agreement was consideration. What's more important here is that the trial counsel chose to not mention the use immunity agreement because it is duplicative of the confidential informant information, and it gives Trumbo an opportunity to attack the identity defense and clarify that her benefit from the use immunity agreement is simply that she cannot be tried for perjury because she hasn't lied, and two, her statements at this trial cannot be used at her further trial for her acts in this crime. So, first, on it being duplicative, the confidential informant information shows that Trumbo had something to gain. In that instance, she was specifically involved with the police for the specific purpose of trying to get a shoplifting charge dismissed, a felony shoplifting charge at that. And so, in prior cases where this court has discussed immunity agreements broadly, including transactional immunity, the key thing is whether or not the state had leverage over the defendant. And here, the leverage was simply to tell the truth or else you face prosecution. And the state does admit that the stakes were higher for Trumbo. She wouldn't have just been faced with perjury as any witness would for lying. Her statements could also be used against her at her further trial. But as the judge in this case recognized, that is the same type of coercion. So, if Trumbo did not have this agreement, she would have been able to invoke the Fifth Amendment, not give testimony. So, what was the advantage to her from the fact that now she couldn't invoke the Fifth Amendment? Right. So, I'm avoiding your question a little bit, but this gets to the part of agreement is a misleading word in this instance because Trumbo didn't agree to anything. This was an agreement between the trial court and the state. The state can put forth a motion to ask for use immunity agreement when they think that there is a substantial likelihood that Trumbo is going to invoke her Fifth Amendment rights. And that was very clear from the fact that she lied, she was involved in this armed robbery. She was going to implicate. So, let me withdraw the question, if I can, and ask if the order from the trial court, did Trumbo benefit from it? I'd argue not really. Benefit is not really the right word. She was forced to testify. But the alternative without that, she could have stood on her Fifth Amendment rights. It's a complicated thing because in the first instance, she could have simply stood on her rights and stood mute in court. But in the alternative, if she doesn't want to implicate the defendant, she would have had to sit in jail and be held in contempt. So, at the end of the day, this is, again, the same type of coercion that every witness faces of you have to testify or be held in contempt. And if you lie when you testify, you face criminal sanctions. Was there any beneficial effect to any charges or potential charges against her? No, Your Honor. And that's a key fact because for the confidential informant, there was a benefit for that shoplifting charge. And so, the defense counsel was very effective in mentioning that both during the cross and, again, during closing. And if the defendant had mentioned this use immunity agreement, it would have just given the state the chance to ask about this on recross or redirect, excuse me, and to clarify that the details of the rule or the agreement, as we just discussed, really just incentivized Trumbo to tell the truth, which is the core of defendant strategy is to argue that Trumbo is lying. And with that, if you have no further questions, I'd like to turn to the Krenkel inquiry. This issue can be addressed most clearly by talking first about what is the purpose of a Krenkel inquiry. The Supreme Court has made clear that the trial court needs to have a adequate inquiry, but they haven't made clear what that really means. And so, this court has emphasized that looking at the purpose is what's really important. And the purpose of the Krenkel inquiry is to establish the factual basis of a claim, if there are any. And that's key to note that if there are any, if there are no factual basis, you will not find any. And I also want to note on the comparison to the People v. Woods case, Judge Doherty, you mentioned it was a total failure of the requirement to investigate or to have a prop or an adequate inquiry. I'd argue it went beyond that, in that the trial court was an obstacle for the court inquiry that they had to pursue. At several times during that inquiry, the trial court says, hurry up, summarize your points, give me the highlights. In this case, the exact opposite happened. You had at first, the defendant was given as long as he wanted to read from his letter and to also add more points that he did not make in his letter. And then the trial court asked him several questions. And then he asked his trial counsel questions. And then he circled back to the defendant and asked the defendant several questions. And then he followed up with the trial counsel more and then went back on certain issues. This was a long investigation where you gave the defendant several opportunities to add, is there anything else you want to add? Are there any other claims you want to make? So here, the purpose of establishing the factual basis and giving the defendant that opportunity was clearly met. And on the four issues, with my time running short, I want to make out one of the words that Judge Dougherty used was far-fetched. And that's exactly what these claims are. Just because the defendant can throw out, the appellant here claims that it was 15, by our reading of the record, it's significantly more than that. They threw out a ton of claims. The trial court gives them the opportunity to add detail, to elaborate on any points, to respond to trial counsel's feedback on those claims. Just because we can still imagine a single or a couple hypotheticals that are far-fetched, that doesn't mean that these claims were meritful. Again, going back, we don't have a lot of detail, but what we have is that claims that are conclusory, that are lacking evidence, that have no merit, that relate solely to trial strategy, are not allowed. And just to make a caveat to the point of solely trial strategy, there are instances where a trial strategy can still be unreasonable, but it takes a far-showing. And a far-showing is not a claim that is far-fetched. Just because we can imagine something, doesn't mean it's likely and that it needs to be investigated. That goes against the complete purpose of the Krenkel inquiry, which is to give us here enough information on the record to say that these claims are far-fetched and not worthy of being investigated. Just very briefly on the third part about Nakia Prather. Nakia Prather could have testified to two things. One, either that Trumbo slept with her confidential informant handler, but that was completely recanted by the defendant. He admits that was not true. And the second one is that the motive for Trumbo would have been jealousy. But jealousy is a statement to make because you can't argue the identity defense and also that Trumbo was just jealous. For those reasons and those mentioned in my brief, we ask that you affirm. All right. Thank you, counsel. Back to you, Ms. Vincent. Thank you. Very quickly. As I noted in my opening argument, the judge in Woods was a little more inquisitive. That doesn't insulate him from missing a few and missing a few good ones. The fact remains that this record is blank as to the four that there was actually no inquiry whatsoever on. Whether or not Judge Yoder was polite or not or was patient or not, you know, he certainly didn't hurry Mr. Scott. But that doesn't mean that the information isn't there. So a note on the use of immunity. You know, the problem with the state's position is that what Trumbo testified to was that she was getting no benefit at all. And that is patently not true. What benefit did she receive? She got use immunity. No, but that's not a benefit. She had the Fifth Amendment. She could have been in exactly the same place without saying a word. She wouldn't have had to testify at all. So it's hardly a benefit to override her right to invoke the Fifth Amendment. How does that make it better for her? Well. I mean, I can. Just from from my personal experience. You know, these things don't happen in a vacuum. And she had to know that, I mean, she had her own counsel. I'm sure her counsel told her, you know, don't say a word. You have the Fifth Amendment. It was the state's decision to grant her use immunity. It's the state's right to grant her use immunity. It is the state's call to grant her use immunity. For one purpose only, and that is to keep her from invoking her Fifth Amendment. So how did she benefit by being stripped of her right to invoke the Fifth Amendment? She benefits from use immunity by because those charges were still hanging over her head. And if you give the state, if you curry favor with the state, that can't hurt you. And I'm sure that's the benefit. So and one final thing. The state kind of combines an all or nothing strategy with identification strategy. And sometimes that can be true. But in this case, this wasn't an all or nothing strategy. This was clearly an identification case. And to the point on whether or not the charges should have been severed, count five should have been severed. This wasn't an all or nothing case because all or nothing would not have prevented him from being charged with count five in another capacity. Because as you'll recall from the record, Trumbo explains that he still got the weapon after the robbery happens. So even if you threw out everything that occurred before then, he's still a felon. He's still in possession. So that would not have solved the problem. And for the remainder, oh, I would point out, I did note that the state admitted that the jury instruction minimizes prejudice, but doesn't make it go away. That may be the case. But that's the whole point. The prejudice did not go away. And with that, we thank the court and submit this on the briefs. Thank you very much. I thank both counsel and advise we will take the matter under advisement, issue a decision in due course, and we now stand in recess. Thank you.